May it please the court. This case involves the constitutionality of 922 G3, the drug user in possession statute. I want to talk a little bit about United States v. Cooper and United States v. Perez, which the government addressed in a Rule 28J letter recently. Cooper said that there are two relevant questions to determine whether a prosecution under 922 G3 can constitutionally go forward. One, did using the controlled substance make the defendant act like someone who is both mentally ill and dangerous? And two, did the defendant induce terror or pose a credible threat to the physical safety of others with a firearm? If one of those two questions is answered yes, the prosecution can go forward. If not, then the prosecution would fall within our national historic tradition of firearm regulation. For Mr. Striplin, based on the factual record that we have, there was no evidence at all that he was high or had been using methamphetamine on the day he engaged with police in a high-speed chase. So there was also no evidence of how he behaved when on methamphetamine, no proof that when using he acts like a mentally ill and dangerous person. As far as the second prong of Cooper, he did not induce terror or pose a credible threat to the with a firearm. There is no evidence on the record in support of that. There are allegations of that in the PSR. So what the government is asking you to do today, what I think they're going to ask you to do, is to have a do-over and to remand this case back to the district court for further factual findings. Here's why I think that would be an inappropriate result. In this case, in between the bench trial and sentencing, United States v. Beasley was decided. Beasley laid out all of the relevant history with respect to drug users in possession, and it thoroughly analyzed three analogs. Intoxication from alcohol, mental illness, and the going armed laws. And what Beasley said about the going armed laws was that the offense was not about mere possession or even openly carrying a firearm. It required more, an offensive use of a firearm. So what the government, I believe, wants is to remand for further factual findings so it can put on this witness who is mentioned in the PSR report, who will say that when he saw Mr. Striplin that night, Mr. Striplin was holding a firearm. And he says that he was kind of pointing it in the air, not directly at the victim, but that would probably be enough to say offensive use of a firearm. But it's not in the record. It wasn't presented by the government, and they had the opportunity to do so, even after the bench trial. They could have said, hey, Beasley has come down. We want to make another offer of proof if you guys won't stipulate. But they didn't do that. And it's interesting that they didn't do it because the PSR was seeking a four-level enhancement for possessing a firearm in connection with another offense, which the government says was aggravated assault. So there's a reason why they didn't call their witness. I don't know what the reason is, but they certainly had a motivation to, to get the four-level enhancement. The same facts that would have proved that enhancement would prove the first prong of Cooper, or supposedly, depending on how the evidence comes out, it might be able to prove the first prong of Cooper. So I don't think there should be a remand. I think the government had notice of Beasley. I think the government had notice of Bruin, which certainly puts the burden of proof on the government. Well, how about the similarity between this case and Ding, with the exception that your client had methamphetamine as opposed to marijuana? Well... Or methamphetamine use. I don't remember the exact facts of Ding and what they had as opposed to what they have in this case. I'm sorry, I'm not familiar with that. But under either prong of Cooper... I'm sorry, what case are we talking about? United States v. Ding, D-E-N-G. I couldn't hear it. Thank you. Case from 2024. I think what the government is saying in its 28J letter is that Perez confirms that going armed to the terror of the people analog does not require that the defendant contemporary carries a firearm. I think in the government's view that simply driving the car in a reckless manner was dangerous enough. But at page 917 of Beasley, it says, the offense of going armed requires the use of a firearm in a way that terrorizes others. And they don't have that in the record in this case. The other thing that Perez said that conflicts with Cooper is that not every application of 922G3 requires an individualized factual determination. So Perez is kind of leaning toward or foreshadowing the use of a categorical approach, similar to what we use for felons in possession of a firearm. Cooper said, though, that neither analog, either confinement of the mentally ill or the going armed logs, operated on an irrebuttable basis. The only analog that operated categorically was alcohol intoxication, but disarmament was not the remedy. Cooper says, page 1097, the risk must support the restriction in each individual case. And so I don't remember if Deng did this, maybe it did, but trying to import felon in possession law from Jackson doesn't work. They don't possess a comparable burden on the Second Amendment right. Remember for felons, the theory is that because the death penalty was available for every felon at the time of the founding, permanent disarmament is subsumed by the death penalty being in existence and widely applicable then. That's not true of the mentally ill or going armed laws. Those people were imprisoned for a period of time, mentally ill were in asylums once we had asylums, but they could regain their rights. They weren't subject to the death penalty. So importing from Jackson just this general rule of dangerousness isn't supported by analogs and it's not supported by Cooper. In fact, it's rejected by Cooper. And in Beasley as well, at footnote two, Beasley says, the reason that you can do a categorical exception for felons is because in Heller, the court said, our ruling casts no doubt on the longstanding prohibitions of felons and the mentally ill. And Beasley said in that footnote, there are no such longstanding assurances for the drug users or those who are addicted to drugs. There is no support from Heller or the Supreme Court that kind of bolsters the ruling in Jackson. And so according to Cooper, we have to have an individualized determination of whether he, when using methamphetamine, is dangerous or whether he, using a firearm, acted to terrorize someone. I'll preserve the rest of my time for thank you. Thank you, Ms. Kurz. Mr. Hurst. May it please the court, Ben Hurst for the United States. Section 922G3 may be constitutionally applied to stripling. I'd like to focus on three facets of the issue that's confronting the court today. First, I'd like to talk a little bit about predictive judgments. Second, about the categorical approach or class-based approach of Jackson that's discussed in Perez. And then third, applying the individual circumstances approach of Cooper to the facts in this case. First, to take up the predictive judgments, the Second Amendment permits legislatures to make as Cooper says, a prior act of dangerousness. A prior act of dangerousness with a weapon is strong evidence of a future likelihood of dangerousness. But as 922G1 and this court's treatment of that in Jackson makes clear, having a felony is also sufficiently predictive of future None of them require that the person who was mentally ill previously acted dangerously with a firearm or that the person who was being disarmed because of terror of the people had previously done something dangerous with a firearm. There's a prediction built into those analogs and that same prediction operates with respect to section 922G3. And with that, I'll take up the question of the categorical approach. What Perez recognizes is that there are class-based deprivations that can comply with the Second Amendment, or at least the potential of those with respect to drug users. That is, habitual users of drugs of a particular drug or people who use a drug with a particular frequency. Now in the government's view, all habitual drug users can be prospectively disarmed because of the risk not only of the changes physiological, the physiological effects of drugs that affect judgment, make you more dangerous, impair your judgment, but also because of collateral effects of drug use. That is, the likelihood that you will commit a theft or other crime is increased. In order to establish the possibility of a categorical approach to this case, do you have some sort of evidentiary burden that you have to bear or is this something that can be decided as simply as a matter of law from general principles or scientific studies or what? I mean, this approach was not the approach that was taken in a trial court, right? That's correct. Now the trial court was dealing with this question. Well, it was a long time ago in terms of these. That's two years, which is a long time in terms of these kinds of cases. So, I mean, this is something that's suddenly been available as a possibility, but is there some evidentiary burden that you would have to show, have to bear? Two responses, Your Honor. First, I would just say in the district court's defense, what it did was apply Jackson, Jackson prior. So there was something of a categorical reasoning behind the district courts. I just didn't want to correct any misimpression on that part. And then the question on evidentiary burden, certainly we'd have to prove that the person is a habitual drug user. And if the class is methamphetamine, as we would propose here, then we'd have to prove that the person is a habitual user of methamphetamine. I think with respect to physiological effects of methamphetamine or collateral effects of drug use, that is of crime, the resort to self-help violence using a firearm when drug deals go bad because drug dealers can't go to the police, or the increased likelihood of violence with law enforcement. Those are all things that are among the legislative facts the court can simply consider when analyzing the statute, what the statute means, what the Congress or the legislature was thinking when it put the statute in place. So we think those, and to be fair, I think, and my friend will correct me if I'm wrong, I don't think that there's a dispute in this case that methamphetamine causes physiological effects, increases the risk of psychosis, increases the risk of dangerousness. And that's especially true with habitual methamphetamine users. It wasn't disputed in this case that the defendant was a habitual user, was it? I thought the dispute was that he hadn't used just previous to the crime committed, but that habitual use had been in his recent past. Certainly, Your Honor. The record of the stipulation at trial was a 10-year history of using methamphetamine previously used within three or four days. There was, I think, a permissible inference of the effects of that methamphetamine use on his dangerous behavior in this case. So just to kind of frame the response, if we're talking here more in terms of the Cooper's individual analysis of the facts of this case and dangerousness, we have the defendant, he manifestly acted in a dangerous way in this case. And I would simply dispute with my friend that the firearm had nothing to do with it. He was carrying a firearm in the car. Firearms are known and have been recognized to increase a willingness to flee police. That's certainly what happened here. The flight was extraordinarily dangerous. All of those things are in the record. There was, in fact, a methamphetamine pipe in the vehicle when he was found. Moreover, I think the court can simply rely on his own counsel's assertions at sentencing that he has an out-of-control meth addiction and that meth is the, quote, primary motivator in the majority of his criminal history. I think that criminal history is fair game for the court in making a dangerousness determination if it's applying Cooper's individual circumstances test. That includes here an instance where he resisted arrest with a large brass knife, two loaded syringes of methamphetamine in his pocket, another instance where he crashed a car into multiple other vehicles, fled, and then when police came to arrest him had to be restrained by EMS during his arrest, a conviction for exhibiting a deadly weapon, two convictions for domestic assault, including one where he threatened to bring his, quote, nine millimeter to the store where his ex-girlfriend worked. So I think there's ample evidence in the record from which the court could conclude that he's a dangerous person, that he is, in fact, dangerous with firearms, and that, as his counsel admitted in sentencing, that meth is the primary motivator in the majority of his criminal history. So I, well, certainly we think that the court could, if it felt that the record was insufficient or wanted to give the district court a first crack at it, and I just know that that's exactly what happened in Cooper and Perez and Baxter. So the idea that there should be some kind of limited record here or some unwillingness to allow the district court to build a further factual record. Well, okay. What about the narrow question? That is, suppose the categorical approach won't work and you have to show somehow that there was a causal connection. You understand what I'm saying? So is this making sense? I think, I think so, Your Honor. So there has to be some direct proof that, in this instance, this is what happened for that to work as applied. I don't think I follow that. Oh, okay. If the categorical approach doesn't work. Yes. And we have to, okay. I think, Your Honor, two points on that. I think the question is, drug use causing him to act as a mentally ill and dangerous person would. The court can just rely on its common sense with respect to the effect of drug use, but he was certainly acting in a dangerous way here. I think that with respect to dangerousness and the going armed to terrorize the people, that is, predictive risk of dangerousness, the court can look at his entire history and not just, in this case, is this person who is a victim. Well, he could, but he didn't, right? Certainly. So would that require remand if we don't buy into the categorical notion? In our view, the record is sufficient because of counsel. Okay. It's not my view, all right? I'm not saying it's the court's view. Fair enough, Your Honor. Let's just say it's a hypothetical. It might not be my view. Fair enough, Your Honor. If the court were to send it back, we think it would be very difficult for the defendant to walk away from the admission he previously made to the district court that meth is the driving motivator in his criminal history. So in this case, that's the actual reason why we think that...  There's just no... You could send it back. Certainly, we would make these arguments. We would seek to introduce the additional evidence of him brandishing. But you think this is sufficient? This record is sufficient, Your Honor. But certainly, if the court... We have remanded in cases. Maybe they're not identical to this one, but sometimes in cases involving these issues, we've allowed the government a do-over. Yes, Your Honor. And certainly, if the court were inclined to remand, we would be asking to make the same sort of opportunity to build the record for the district court so that it could apply the laws this court has announced. I see that I'm out of time. We would ask the court to affirm the judgment of the district court in this case. Thank you. Thank you. Ms. Kersh. Thank you, Your Honor. My colleague said that carrying a firearm should be enough. Historically, carrying a firearm by intoxicated individuals was not prohibited until the end of the 19th century. You see the first one in Missouri versus Shelby. And in the colonial times, what was prohibited was firing the firearm, not simply carrying or possessing. And that's put forth in Veasley. Another thing my colleague said was that legislatures can make predictive judgments about future dangerousness. True, but what addressed those was the system of surety laws discussed in Rahimi. And the surety laws were individualized determinations, not categorical. You had to understand what threat did that particular person pose, and then are you going to force that person to put up a bond if they will agree to keep the peace? So surety laws also correspond with as-applied challenges. The government says that the use of drugs, methamphetamine, causes changes physiologically. It impairs judgment. There are collateral consequences. It may cause people to commit other crimes. All of that is true for people who get intoxicated on alcohol. Judgment is certainly impaired. You lose motor control. So handling a firearm is more dangerous. Driving a car is more dangerous. And we didn't, or there's no record of it, no historical record of it, set forth in Veasley in which people who were intoxicated were disarmed. They were allowed to keep their arms. And even when you get to the end of the, when you get into the 1800s, the punishment was short jail terms or fines. Nothing approached the 10 or 15 year now lengthy term of imprisonment that 922 G3 imposes. So the burdens are not comparable. Thank you. Thank you, Ms. Coors. Thank you also, Mr. Hurst. Court appreciates both counsel's arguments to the court. We will continue to study the briefing and render decision. Thank you.